In the Matter of the Probate of the Will of MATILDA TURNER, Deceased.

JOHN TURNER et al., Appellants; JAMES E. TURNER et al., Respondents.

Will — construction of will giving three pieces of real property to three sons without specifying which each should take — provision not void for uncertainty— devisees may elect.

Where a testatrix bequeathed to her son John one house, to her son George one house, and to her son William one house, the bequest is not void for indefiniteness and uncertainty, although the houses were leaseholds varying in value, with rent or income differing in amount, and with different taxes and ground rents; but the bequest is valid and the three sons are entitled to elect as to the house each will take in accordance with the order in which they are named in the will.

*Matter of Turner*, 149 App. Div. 946, reversed.

(Argued June 4, 1912; decided June 29, 1912.)

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, entered March 29, 1912, which affirmed a decree of the New York County Surrogate's Court adjudging certain bequests in the will of Maria Turner, deceased, to be void for indefi-

niteness and uncertainty and further adjudging that by reason of the invalidity of such bequests the whole testamentary scheme of the testatrix failed.

The decree had been entered upon a prior order of the said Appellate Division reversing a former decree of said Surrogate's Court admitting the said will to probate and construing as valid the provisions thereof.

The facts, so far as material, are stated in the opinion.

*Charles Blandy, Frederick A. Card, Ralph W. Thomas* and *William H. Blandy* for appellants. The bequests to John Turner, George Turner and William Turner are valid, and sufficiently definite to indicate what the testatrix meant. (*Matter of James*, 146 N. Y. 78; 2 Jarman on Wills, 478; *Haug* v. *Schumacher*, 50 App. Div. 562; 166 N. Y. 506; 2 Redfield on Wills, 478; *Robinson* v. *Martin*, 200 N. Y. 159; *Eidt* v. *Eidt*, 203 N. Y. 325; *Starr* v. *Starr*, 132 N. Y. 154; *Wager* v. *Wager*, 96 N. Y. 164; *Tilden* v. *Green*, 130 N. Y. 29; *Du Bois* v. *Ray*, 35 N. Y. 162; *Winter* v. *Perratt*, 6 M. & G. 359.)

*William H. Hamilton* and *Norman C. Conklin* for James E. Turner et al., respondents. The bequests to "John Turner one house, George Turner one house, William L. Turner one house," are void for uncertainty. (*Asten* v. *Asten*, L. R. [3 Ch. 1894] 260; *Matter of Young*, 123 Cal. 337; *Crooks* v. *Whitford*, 47 Mich. 284; *Dowset* v. *Sweet*, 1 Amb. 175; *Christy* v. *Badger*, 72 Iowa, 581; *Palmer* v. *Albee*, 50 Iowa, 429; *Tuttle* v. *Berryman*, 94 Ky. 553; *Hawman* v. *Thomas*, 44 Md. 30; *Mohun* v. *Mohun*, 1 Swanst. 201; *Bailey* v. *Bailey*, 52 N. C. 44.)

*Theodore K. McCarthy* and *Irwin Untermyer* for Robert L. Turner et al., respondents. The bequests to John Turner, George Turner and William L. Turner are void for uncertainty. (Schouler on Wills [3d ed.], 677; *Lippen* v. *Eldren*, 2 Barb. 130; *Asten* v. *Asten*, L. R. [3 Ch.

Div.] 260; *Trunkcy* v. *Van Sant*, 176 N. Y. 535; *Matter of Shattuck*, 193 N. Y. 446; *Underhill* v. *Kerns*, 54 App. Div. 214; *Peck* v. *Williams*, 10 N. Y. 509; *Harrington* v. *Abberton*, 115 App. Div. 177; *Gallavan* v. *Gallavan*, 31 Misc. Rep. 282; 57 App. Div. 320.)

WILLARD BARTLETT, J.  This case involves the construction and validity of the following will:

"NEW YORK, *Aug.* 2/1909.
"IN THE NAME OF GOD, AMEN.

"I

Matilda Turner bequeath
unto my sons & daughters
as follows in case of my death.
John Turner One house
George Turner One house
William L. Turner one house
Jennie S. Fox one house at
402 W. 29 St. N. Y. City and
Matilda D. Turner One House
400 W. 29 St. and one house
331-9th Ave., Half contents of
house to Jennie S. Fox and
Matilda D. Turner.

her
"MATILDA X TURNER
mark

"Witness
    "JAMES W. PATTERSON, *Com. of Deeds*
    "NELLIE LOONEY
    "ELLA M. WYATT."

The houses mentioned in the instrument were or are six leaseholds, being Nos. 325, 327, 329 and 331 Ninth avenue and Nos. 400 and 402 West Twenty-ninth street in the city of New York.  These leaseholds vary in value. The rent and income derived from the houses differs in amount, the taxes are unlike in amount and the ground rents upon them are not the same in amount.

The Appellate Division has held that the bequests to the three sons of the testatrix are void for uncertainty because there is nothing in the will by which the three leaseholds attempted to be bequeathed to them can be identified; and that the gifts to the daughters must also fail because "it would be unjust to hold that the two daughters might take under the will and then share with the three brothers and other next of kin under the statutes of distribution." Two justices of the Appellate Division, however, dissented from these conclusions, holding that the bequests to the sons are valid and that the sons should be treated as tenants in common of the three leaseholds which were not specifically bequeathed to the daughters.

Mr. Justice MILLER says in the dissenting opinion that he has found no case in this state directly bearing on the one in hand. Notwithstanding a diligent search I have been equally unable to find any decision squarely in point by the courts of other states. The only helpful authorities seem to be three English cases, one of which is relied upon in the prevailing opinion below while the two others are cited in the dissenting opinion. When carefully examined I think that all these cases tend to sustain the validity of the bequest to the three sons.

The first in order of time is *Duckmanton* v. *Duckmanton* (5 Hurlstone & Norman, 219) which arose in the Court of Exchequer in 1860 and was heard before Chief Baron POLLOCK, Baron MARTIN and Baron WATSON. There the testator devised to his son John Duckmanton one freehold close of land situate in Ridgeway Field in Warsop and also to his son George Duckmanton one freehold close of land situate in Ridgeway Field in Warsop aforesaid. The judges were unanimously of opinion that the devise was not void. Chief Baron POLLOCK said: "The testator, who was possessed of two closes in Ridgeway Field, left one to John and one to George, without saying which was for John and which for George. It

was a case for election. It was admitted that if he had devised one to John, and said nothing as to the other, the devise would have been good. So, if he had devised one to George, it would in like manner have been a good devise. But he devised one to each, and it is said that the devise must therefore mean nothing. I cannot understand that." Baron MARTIN was of the same opinion, saying it was surely no strained construction to hold that the will meant I wish John to have one close and the other close to go to George. Baron WATSON said there was direct authority that a devisee as against the heir at law would have a right of election if the devise had been simply "I have two closes and give one to John." Here both closes were in Ridgeway Field and on the face of the will the testator devised both. "Why should there not be an election?" he asked. The uncertainty was who was to make the election. He suggested that it might be the person first named in the will, but the case presented no embarrassment on that point because it appeared that the testator had said in his lifetime that the plaintiff and defendant might toss for the choice of the fields and they had actually resorted to that method to adjust their respective claims.

The *Duckmanton* case is cited by Mr. Jarman in his chapter entitled "Gifts, When Void for Uncertainty," in which he says: "Where the gift comprises a definite portion of a larger quantity, it is not rendered nugatory by the omission of the testator to point out the specific part which is to form such portion, the devisee or legatee being in such case entitled to select; by which means the subject of the gift is reducible to certainty; and *id certum est quod certum reddi potest* is a settled rule in the construction of wills. Thus, if a man devise two acres out of four acres that lie together, it is said that this is a good devise, and the devisee shall elect. So, if a testator devise a messuage, and ten acres of land surrounding it, part of a larger number of acres, the choice of such ten

acres is in the devisee." (1 Jarman on Wills [Randolph & Talcott's edition], p. 652.)

The next English case in order of time is *Tapley* v. *Eagleton* (L. R. [12 Chan. Div.] 683). There the testator was possessed of three leasehold houses in King street. He bequeathed "two houses in King Street" to one Purcell for life and directed that after Purcell's death the premises should form part of the testator's residuary estate. Sir GEORGE JESSEL, Master of the Rolls, held that under this gift two of the testator's houses in King street passed to the legatee who was entitled to elect which of the three houses he would take. The learned judge cited the *Duckmanton* case in his opinion and said it was not distinguishable from the case before him; and the decree was that the legatee should elect which two of the three houses he would take and should be entitled to the same accordingly for his life.

The third of the cases to which I have referred is *Asten* v. *Asten* (L. R. [2 Chan. Div. 1894] 260), which was heard before Mr. Justice ROMER in 1894. The testator in that case owned four freehold houses in Sudely place, Colchester, which were newly built and had not been numbered at the time of the execution of his will. To one of his sons he left "all that newly built house, being No. — Sudely Place, Cotsfield Road;" to another son "All that newly built house, being No. — Sudely Place, Cotsfield Road;" and to his two other sons two more houses similarly described. The court reluctantly came to the conclusion that the testator died intestate as to these four houses, because it appeared clear from the will that the testator intended to give a particular house to each son and not to give any right of selection or election to any son. In this respect the case differed from *Duckmanton* v. *Duckmanton* and *Tapley* v. *Eagleton* (*supra*), in neither of which was there any indication that the testator intended to give a particular piece of property to a particular legatee or devisee. As to this point

Mr. Justice ROMER said: "I should myself be prepared to hold that, where a testator gives one of such properties to each of several legatees, then he intends (*prima facie*) to give the right of selection to the legatees according to the priority of the bequests."

As is pointed out in the dissenting opinion in the present case, there is no real conflict between *Asten* v. *Asten* and the two previous English cases which have been considered.

I think we should follow the doctrine of those cases and hold that the bequest to the three sons of Mrs. Turner is valid and that they are entitled to elect as to the house each will take in accordance with the order in which they are named in the will. An objection to the theory of the dissenting opinion below, holding that they take the three houses as tenants in common, is that there is no indication in the will that the testatrix intended to make equal provision for the objects of her bounty, for, as has already been shown, the several houses differ materially in value. It is only this difference of view which makes it necessary to add anything to what is so well said by Mr. Justice MILLER therein in support of the validity of this will.

The order of the Appellate Division and the decree of the Surrogate's Court should be reversed, without costs, and judgment directed to the effect that all the bequests in the will of Matilda Turner, deceased, are valid, and that the sons are entitled to elect, in the order in which they are named in the will, as to the houses which they will take.

CULLEN, Ch. J., GRAY, WERNER, CHASE and COLLIN, JJ., concur; HISCOCK, J., dissents.

Order reversed, etc.