**ELLET et al. v. McCORD et al.**
No. 7550.

Court of Civil Appeals of Texas. Austin.
June 10, 1931.

Motion for Rehearing Overruled July 1, 1931.

Dibrell & Starnes, of Coleman, for appellant.

Chas. J. Schuck, of Wheeling, W. Va., and Critz & Woodward, of Coleman, for appellees Mary Medley McCully, Agillia M. Franzell, Charles P. Van Cleve, and Mary Van Cleve.

W. Marcus Weatherred, of Coleman, for appellee J. P. McCord.

BLAIR, J.

Appellee J. P. McCord, executor of the will and estate of Mrs. Martha Tyler Overall, deceased, filed this suit against all persons interested in the will or estate of said decedent to construe her holographic will and her holographic codicil thereto, which read, omitting unnecessary portions, as follows:

"I, Martha Tyler Overall, of said Coleman County, State of Texas, mindful of the certainty of death, and desirous of settling my worldly affairs, and making proper disposition of my property and realizing my steward-

ship to God, have disposed of my property to the best of my ability, in the fear of God.

"If any one whose name appears in this will, is disposed to find fault, with what I have done with my own, they shall be cut off, from having any part in this will. I do, here now, and by these presents make and declare this my last will and testament, revoking all others made by me.

"First: I desire and direct that all my just debts be first paid, out of my personal property and estate;

"Second: I will and direct that the sum of Two Thousand Dollars ($2,000.00) shall be set apart and turned over to the 'Woman's Missionary Society of the M. E. Church, South, Coleman, Texas.' * * *

"Third: I bequeath, will and direct that the sum of Fifteen Thousand Dollars ($15,-000.00) of lawful money be set apart and turned over to my niece, Mary Medley McCully, of Britton, Oklahoma, and in case she dies before I do, then it shall go to her children. I also bequeath to her all my household goods, furniture, clothing, silver ware and pictures of every character then on hand. And if she so desires, she may have use of my dwelling house, free of rent, for one year or whatever time required for her to dispose of same, above furniture, etc.

"Fourth: I bequeath, will and direct that the sum of Five Thousand Dollars ($5,000.00) of lawful money to be set apart and turned over to Ezra Overall, a nephew of my deceased husband R. H. Overall, and in case he should die before I do, then that amount shall go to his children. I will state that for twenty-five years I have given him six hundred dollars, each year, beside other amounts, making in all about fifteen thousand dollars to the present date.

"Fifth: I bequeath, will and direct that the sum of Five Thousand Dollars be paid to my sister, Mrs. Mary A. Overall of Kansas City, Missouri. If she should die before I do, I desire that amount to remain a part of the estate.

"Sixth: I bequeath, will and direct that the following sums of money, attached to the different names of parties, who are nephews, nieces and relatives of my deceased husband R. H. Overall, to be turned over to them; namely: * * * (Here follow fifteen specific money bequests, aggregating $170,000.00, the fourth of which, for $1,500.00, is to Frank E. Williams, Denver, Colorado.)

"Seventh: I bequeath, will and direct, that the following sums of money attached to the different names of parties, who are my own nephews and nieces, be paid them, namely: * * * (Here follow twenty-two specific money bequests, aggregating $123,500.00).

"Eighth: I further bequeath, will and direct that the sum of Twenty-five Thousand ($25,000.00) Dollars be paid to Mr. J. T. Blair, in appreciation of his faithful service, and respectful friendship these many years.

"Ninth: I further bequeath, will and direct that Twelve Thousand ($12,000.00) Dollars shall be turned over to the Trustees and stewards of the M. E. Church South, of Coleman, Texas, to be held in trust for the Church, the interest of same, to be used, for the benefit of the Church, in helping to pay the minister and in other collections, and in keeping up the church property.

"Tenth: I further bequeath, will and direct that Fifteen Thousand ($15,000.00) Dollars, shall be turned over to the 'Woman's Missionary Council' of the M. E. Church, South, and the interest of same be used annually to continue a Missionary in the foreign field, which I have supported since 1911, which place is now being filled by Miss Lydia Ferguson, of Texas, in Rio de Janero, Brazil.

"Eleventh: I further bequeath, will and direct that the following sums of money attached to the names of Miss Sue Robbins, San Angelo, Texas, $1,000.00 Miss Nannie L. Jenkins, Coleman, Texas, $1,000.00 be paid to them in recognition of their loving friendship and kind attention.

"Twelfth: I also bequeath, will and direct that the sum of money attached to his name be paid to Mr. J. P. McCord, $5,000.00 in rememberance of his past services and his friendly accommodations.

"Thirteenth: I further bequeath, will and direct that the following sums of money attached to the following institutions of the M. E. Church, South, be paid to them: namely

| | |
|---|---|
| Southern Methodist University, Dallas, Texas, | $10,000.00 |
| Southern University, Georgetown, Tex. | 10,000. |
| Central College, Fayette, Missouri, | 10,000. |
| Texas Woman's College, Ft. Worth, Tex. | 5,000. |
| Methodist Orphans Home, Waco, Texas. | 5,000. |
| Virginia K. Johnson, Rescue Home. Dallas, Texas | 5,000. |

"Fourteenth: I further bequeath, will and direct that the sum of One Hundred Thousand Dollars be turned over to a 'Board of Trustees,' elected or appointed by the 'Quarterly Conference' of the M. E. Church, South, of Coleman, Texas. This Board shall consist of one man and one woman from the M. E. Church South, one man and one woman from the Presbyterian Church, one man or woman from the Baptist Church, one man or woman from the First Christian Church, and one man or woman from the Episcopal Church, making in all seven members. To this board shall be added the Mayor of Coleman and the Judge of Coleman County. This Board of Trustees shall hold in trust the above sums

of money, (less whatever may have been paid on lot and building) for the purpose of building and maintaining and equipping a Hospital in Coleman, Texas. Not over half of the above sum shall be expended in grounds and building, and the balance to be reserved as an endowment fund to assist in the expenses of running the Hospital. I desire there to be two wards for charity patients. This gift is intended for the town and county of Coleman, Texas, from 'R. H. Overall and wife' where we have made our home, since 1876, and where our bodies will lie, until the resurrection day. I will add to the above, that should any of these five church organizations cease to exist the other churches remaining, shall have charge of the bequest. That no delay may occur in carrying out this bequest, I desire that my Government and Federal Land Bank bonds shall be used as far as they will go.

"Fifteenth: If any money shall remain after the foregoing bequests have been filled, I desire that two thousand dollars shall go to the town of Coleman, to be placed in the hands of a 'Board of Trustees' to start an endowment fund, for the Cemetery at Coleman, Texas. If still any money remains, it shall be equally divided between Mrs. Lucy R. Van Cleve, Mrs. Agilla M. Franzell, and Mrs. Mary M. McCully, children of my sister, Mrs. Maria L. Miller, who cared for me when four years old, at my mother's death.

"Sixteenth: I name, nominate and appoint J. P. McCord of Coleman County, Texas, my executor.

"Martha Tyler Overall.
"Codicil.

"Referring to clause 'Fourteen' in this will bequeathing one hundred thousand dollars for the building, furniture, equipping and endowing a hospital in Coleman, Coleman County, Texas, I will state that this bequest has already been carried out, the hospital completed and turned over to the 'Board of Trustees'

"In the 4th division under Clause 6th of this will a bequest of fifteen hundred dollars ($1,500.00) is left to Frank E. Williams, Denver, Colorado, son of Hattie O. Williams (deceased). Since writing of this will, Frank E. Williams of Denver, Colorado, has died leaving no children and I desire that the amount of $1,500.00 devised to him shall remain a part of the estate.

"Mrs. Martha Tyler Overall.
"April 11th, 1924."

The will and codicil were duly admitted to probate. J. P. McCord was appointed and qualified as executor. The money bequests aggregated $436,000, of which $100,000, the bequest to the Coleman Hospital, and the $1,500 bequest to Frank E. Williams were eliminated by the codicil. All other money bequests were paid except the $2,000 provided in clause 15 as a cemetery endowment fund. The trial court ordered the executor to pay this amount as directed. At the time testatrix executed the will, she had $4,083.97 in cash, bonds and securities valued at $70,000, and cattle valued at $35,000, and her real estate was of a value more than sufficient to pay all pecuniary bequests. At the time she executed the codicil, she had disposed of her bonds and securities to build and equip the Coleman Hospital, and she had on hand $3,734.61 in cash and cattle valued at $25,000 and the same real estate which she owned on the date she executed the will. At the time of her death, testatrix had $2,500 in cash, cattle valued at $40,000, and the same real estate which she owned at the time she executed both the will and the codicil, and which exceeded in value all pecuniary bequests. The executor sold under order of the probate court sufficient real estate to pay the money bequests directed in the will, except the $2,000 cemetery endowment.

We sustain the trial court's construction of the will as showing that testatrix intended to dispose of her entire estate and to blend both her personal and real property in what she termed her "estate" or "money" and to charge such estate with the payment of all pecuniary bequests. In the preamble clauses of the will, she used the term "property," expressing the desire to dispose of "my property," in the effort to settle her "worldly affairs." "Property" ordinarily includes all that one owns of exchangeable value. 6 Words and Phrases, First Series, page 5346; In re Tiburcio Parrott (C. C.) 1 F. 481, 506; Butchers' Benev. Ass'n v. Crescent City Live Stock Landing, etc., Co., 83 U. S. (16 Wall.) 36, 21 L. Ed. 394; 3 Words and Phrases, First Series, page 2484.

In the second clause of the will testatrix directed that her debts "be first paid out of my personal property and estate." The word "estate" means property, and "property" means estate, and, unless otherwise limited, the use of these words in a will ordinarily embraces and comprehends property of every description. 3 Words and Phrases, First Series, page 2479; Deering v. Tucker, 55 Me. 284, 287; Laing v. Barbour, 119 Mass. 523; 3 Words and Phrases, First Series, page 2484; Johnson v. Johnson, 32 Minn. 513, 515, 21 N. W. 725; Fosdick v. Town of Hempstead, 55 Hun, 611, 8 N. Y. S. 772; Price v. Price, 52 N. J. Eq. (7 Dick) 326, 329, 29 A. 679; Rue v. Connell et al., 148 N. C. 302, 62 S. E. 306, 308.

Manifestly testatrix intended to use the word "estate" in its broadest sense throughout her will. In the first clause she directed that both personal property and estate be used to pay her debts, thus showing that she had knowledge of the distinction between personal property and real property, and that she intended to dispose of the entire estate, both real and personal, if necessary to pay her debts. In both the fifth clause of the will and the last paragraph of the codicil testatrix di-

rected that, if the specific legacies mentioned should lapse because legatees predeceased her, then such legacies should "remain a part of the estate." This clearly showed that testatrix used the word "estate" so as to comprehend and embrace her entire property.

It is true that testatrix did not describe her property in the will, nor did she make any bequests of specific property, except her household goods and clothing. But the fact that she did not describe her property in the will is no evidence that she did not intend to dispose of it all by the will, and the natural and logical inference to be drawn from the fact that testatrix directed the payment of her debts out of her "personal property and estate," that she directed that lapsed legacies should remain a part of her "estate" to be distributed under the residuary clause, that she made large bequests to friends, relatives, and institutions, coupled with the preamble clauses of the will to the effect that, in view of the certainty of death she was desirous of settling her worldly affairs by making proper disposition of her property, is that she meant to dispose of her entire estate, both real and personal, blending the estate in "money" for the purpose of carrying out the provisions of the will. This construction of the will is aided by the legal presumption that testatrix did not intend to die intestate as to any of her property, and that, where residue is given by a will, every presumption is against an intended intestacy. Grant v. Stephens (Tex. Civ. App.) 200 S. W. 893; Verhalen v. Klein (Tex. Civ. App.) 268 S. W. 975; Vol. 28, Third Decennial Digest (Wills) pages 393, 440, Heller v. Heller, 114 Tex. 401, 269 S. W. 771; Bruce v. Bruce, 90 N. J. Eq. 753, 107 A. 434.

But appellants contend that, since testatrix did not describe her property, and since in making the pecuniary bequests she used the words "lawful money," "sums of money," and "dollars," she intended to charge only her personal estate or money with the bequests, and to leave her real estate undisposed of by the will. Manifestly this construction would violate the rule of presumption against intestacy, and a more reasonable construction of the whole will is that testatrix intended to dispose of her "property" and to blend her personal and real property in what she termed her "estate" or "money." It was not necessary for testatrix to describe her property in the will, since she made no bequests of specific property. Nor was it necessary for her to authorize the executor to sell the real estate, because she contemplated that he would do so in order to pay the pecuniary or "money" bequests, and in order that the residuary estate might be paid in "money" in keeping with testatrix' express intention to dispose of her "property" and to settle her "worldly affairs." This construction of the will comports with

the manifest object and intention of testatrix as determined from consideration of the subject-matter and the circumstances attending its execution, which is a cardinal rule in the construction of a will. Or, as said by this court in the case of Briant v. McGown, 15 S.W.(2d) 1110, 1112 (writ refused): "In the construction of such instruments, the courts are permitted to place themselves as nearly as possible in the position of the testator, and view the subject-matter and surrounding circumstances in the same light as he viewed them, and from such viewpoint to give to the language employed that construction which most nearly comports with the manifest object or intention of the testator." In view of this rule and the language used in testatrix' will and the large "money" bequests, amounting in the aggregate to $436,000, when she had but a comparatively small sum of money or cash at the time she executed both the will and codicil, it is manifest that she intended to charge her whole estate with the payment of her pecuniary bequests. To sustain appellants' contention would be to have testatrix die intestate as to the greater portion of her estate, and to give the words "lawful money," "sums of money," and "dollars" their technical or literal meaning of money or cash, would result in testatrix doing a useless thing in making the bequests, knowing she did not have the actual "money" or cash with which to pay them, or would at least result in testatrix giving very small inconsequential benefits and value under the guise of making large and substantial bequests to her relatives, friends, and institutions. It will not be presumed that testatrix in making specific money bequests intended to do a useless thing, or that the objects of her bounty should receive only a small portion of their bequests, when in fact testatrix had property more than sufficient to pay all her bequests both at the time she executed the will and the codicil.

It is a settled rule of construction that extrinsic facts as to the subject-matter and circumstances attending the execution of a will may be shown in aid of its interpretation, especially where its language is reasonably susceptible of two constructions. Briant v. McGown, supra; In re Herborn, 189 App. Div. 319, 178 N. Y. S. 582; Vol. 28, Third Decennial Digest (Wills) page 758, Ely v. Megie, 219 N. Y. 112, 113 N. E. 800; In re Lummis, 101 Misc. Rep. 258, 116 N. Y. S. 936. Appellants contend for a construction of testatrix' will different from that given it by the court and appellees in the particular above discussed; and the court did not err in admitting extrinsic evidence as to the kind and character of property testatrix owned when she made her will and the codicil thereto. It has been held in other jurisdictions that, where legacies exceed the value of personal property, they are chargeable against tes-

tator's real property not specifically devised, under the rule that he intended to dispose of his entire estate. Ely v. Megie, 219 N. Y. 112, 113 N. E. 800. It has also been held that the amount of personal property on hand at the time of the execution of a will is a dominating factor as to whether legacies are chargeable on realty. In re Lummis, 101 Misc. Rep. 258, 166 N. Y. S. 936; In re Rhodes' Estate, 109 Misc. Rep. 406, 178 N. Y. S. 782; Vol. 28, Third Decennial Digest (Wills) page 759, ▆▆▆▆ In re Strolberg's Estate, 106 Neb. 173, 183 N. W. 97, 26 A. L. R. 643, where it is held as follows: "Evidence of the testator's financial condition and habits of investment is admissible to show that he did not at the time he made the will have, or contemplate having when the will should become operative, sufficient personal property to discharge the legacies, and that, therefore, it was not his intention that his personal estate alone should be responsible for their payment."

▆▆▆ From the evidence that testatrix never kept any considerable money on hand, but kept her principal estate invested in realty, and at no time had sufficient personal estate to discharge the legacies provided in her will, and since she did not specifically devise her realty, we think she intended that her pecuniary legacies should be chargeable on her realty. In the case of McGoldrick v. Bodkin, 140 App. Div. 196, 125 N. Y. S. 101, 102, the rule applicable here is stated, as follows: "It is to be presumed that a will was drawn honestly and in good faith, and that when testator provided a legacy he intended that it should be paid; such presumption not being absolute, but coming into play only when the circumstances surrounding the making of the will give fair cause for its rise. * * * Hence the courts have always considered as of almost controlling importance on the question of the testator's intent the fact whether or not when he made his will his personal estate was sufficient to pay in full or in part the legacies therein expressed; for, as was frequently argued, if, when he made the will and specified the legacies, he knew that he had not sufficient personal property to pay them, he should be deemed to have intended to subject his residuary real estate to the burden of payment, or otherwise he must be deemed to have made his will a mere trick upon the legatees." Verhalen v. Klein (Tex. Civ. App.) 268 S. W. 975; Philleo v. Holliday, 24 Tex. 38; Hunt v. White, 24 Tex. 643; Darragh v. Barmore (Tex. Com. App.) 242 S. W. 714; White v. White (Tex. Civ. App.) 257 S. W. 939.

▆▆▆ In the fifth clause of her will testatrix bequeathed $5,000 to her sister, Mrs. Mary A. Overall, but provided that, "if she should die before I do, I desire that amount to remain a part of the estate." Mrs. Overall predeceased testatrix, and this lapsed legacy fell into the residue of the estate under

the specific direction of testatrix. Also in clause sixth testatrix bequeathed $4,000 to Daniel G. Overall and $1,500 to Edwin O. Carter; and in clause seventh she bequeathed $1,000 to Mrs. Mary Robinson and her two daughters. Daniel G. Overall, Edwin O. Carter, and Mrs. Mary Robinson predeceased testatrix, and, although testatrix did not specifically direct that these lapsed legacies should fall into the residue of her estate, they did so under the settled rule that lapsed legacies fall into the residue of the estate where testatrix intended to dispose of her entire estate. Bittner v. Bittner (Tex. Civ. App.) 27 S.W.(2d) 852, and cases there cited. We have held above that testatrix intended to dispose of her entire estate and to blend both personal and real property in what she termed "money" to be disposed of by paying all specific legacies and by paying out the residue in "money" to the residuary legatees entitled thereto. And this brings us to the question as to who is entitled to the residuary estate of testatrix.

▆▆▆Testatrix provided in the residuary clause of her will that, "if any money still remains, it shall be equally divided between Mrs. Lucy R. Van Cleve, Mrs. Agillia M. Franzell and Mrs. Mary M. McCully, children of my sister, Mrs. Maria L. Miller, who cared for me when four years old, at my mother's death." Mrs. Van Cleve predeceased testatrix, leaving surviving her two children, appellees Charles P. Van Cleve and Mary Van Cleve. The trial court construed the residuary clause as showing that testatrix intended that the remaining money, if any, should go to the class composed of the children of her deceased sister as a class bequest, and from this conclusion deduced that the two living residuary legatees were each entitled to one-third of the residue, and that appellees Charles P. Van Cleve and Mary Van Cleve were jointly entitled to one-third of the residue as the children of the third residuary legatee, Mrs. Lucy R. Van Cleve, deceased. This construction of the residuary clause is clearly wrong in both particulars. The testatrix expressly provided that the residue of her estate, which she termed "money" in its most comprehensive sense, should be equally divided between her three nieces named. The number of residuary legatees was therefore definite and certain. The interest in the residuary estate bequeathed to each of the three legatees was also definite and certain, and there were no words of survivorship in the will in the event either named legatee should predecease testatrix. The case of Hagood v. Hagood (Tex. Civ. App.) 186 S. W. 220, 225 (writ of error refused), is directly in point on the issue here presented, and from which we quote as follows: "The contention is that we should construe the bequest of R. L. Hagood to his brothers J. O. Hagood and R. B. Hagood as a devise to a 'class.' The authorities are uniform to the

effect that where a devise is made to two or more named persons, and one or more of such persons die before the testator, and there are no words of survivorship in the will, the property, which by the terms of the will goes to such deceased person or persons, lapses and becomes a part of the testator's undevised estate and descends to his or her heirs, regardless of the terms of the will."

We therefore reform the judgment of the trial court as regards the residuary estate so as to decree that to each Mrs. Franzell and Mrs. McCully shall go one-third of the residuary estate; the remaining one-third bequeathed to Mrs. Lucy R. Van Cleve lapsed because she predeceased testatrix, and that such one-third shall lapse and pass to the heirs at law of testatrix in the manner and in the proportions as follows, to wit: Mrs. Mary McCully, 120/2160; Mrs. Agilla Franzell, 120/2160; Charles P. Van Cleve, 60/2160; Mary Van Cleve, 60/2160; Mrs. Mary Kemper, 180/2160; Victor B. Buck, 90/2160; Edward H. Buck, 90/2160; Mrs. Lucille Faulk, 180/2160; Charles Roberts Stewart, Mrs. Ruby Roberts Stewart, Guardian, 90/2160; John Roberts Stewart, Mrs. Ruby Roberts Stewart, Guardian, 90/2160; Mrs. Mary Rockwell, 72/2160; James E. Robinson, 72/2160; Clarence McD. Robinson, 72/2160; Mrs. Hattie Leggett, 36/2160; Mrs. Ella Scaritt, 36/2160; William S. Gamble, 9/2160; Mrs. Cordelia Burton, 9/2160; J. Carr Gamble, 9/2160; E. Ross Gamble, 9/2160; Clark H. Gamble, 9/2160; Leonelle Gambell, 9/2160; Mrs. Dorcas Perry, 9/2160; Lynn H. Gamble, 9/2160; Samuel O. Barton, 24/2160; Kimber L. Barton, 24/2160; Hughes R. Barton, 24/2160; Mrs. Margaret R. Griffiths, 24/2160; Mrs. Hattie Lee Heddins, 24/2160; Mrs. Florence O. Ellet, 120/2160; Mrs. Fannie M. Overall, 120/2160; Mrs. Nora Lilly, 120/2160; Mrs. Lucy Treadway, 120/2160; Francis Virginia Robinson (Lucia C. Robinson, Guardian) 120/2160.

The above disposes of all questions presented, and the judgment of the trial court will be reformed and affirmed in accordance with this opinion.

Reformed and affirmed.