SHULTERS and others vs. JOHNSON and others.

A testator, by his will, gave and bequeathed to his two daughters, each, the
    sum of $200, to his son G. the sum of $400, and to his son D. the sum of
    $50, and lastly, he gave and devised all the "*rest, residue and remainder*"
    of his real and personal estate, goods and chattels, to his two sons J. and
    D. M. to be divided equally between them, share and share alike. There
    was in the will no express charge of the legacies upon the real estate, and
    there was no fund created out of which they should be paid, and no direction
    as to when, or by whom they should be paid. Nor was there any specific
    devise of any portion of the real estate. The testator was seised of real
    estate of the value of several thousand dollars, but did not leave personal
    property sufficient to pay any portion of the legacies.
*Held* that it was the intention of the testator that the legacies should be paid
    out of whatever property he should leave, and that only the residue, after
    their payment, should go to the residuary legatees. JOHNSON, J. dissented.

APPEAL from a judgment entered on a decision of the
court at special term, adjudging that certain legacies
given by the will of Amos Dawley were not chargeable upon
the real estate of which he died seised.

The will, so far as it relates to the disposition of property,
is in the following form :

. " First. I give and bequeath to my daughter Almira the .
sum of two hundred dollars. ·

Second. I give and bequeath to my daughter Sally Eliza
the sum of two hundred dollars.

Third. I give and bequeath to my son George the sum
of four hundred dollars.

Fourth. I give and bequeath to my son Duty M. the sum
of fifty dollars.

Lastly. I give and devise all the rest, residue and remain-
der of my real and personal estate, goods, and chattels of what
nature and kind soever, to my two sons J. J. W. Dawley and
Daniel M. Dawley, to be divided equally between them, share
and share alike : and I do hereby appoint Stephen B. Tidd
my sole administrator of this my last will and testament."

Shulters *v.* Johnson.

The testator died seised of lands of the value of several thousand dollars, but (as is found by the court) did not leave sufficient personal property to pay the legacies "in whole or in part."

The plaintiffs, Sally Shulters and Almira Parks, are the daughters of the testator, to each of whom $200 is bequeathed by the will, and they seek to have the same declared a charge on the lands devised to J. J. W. Dawley and Daniel M. Dawley, and now held by other parties, defendants herein. Nothing is said in the will as to how, when, or by whom the legacies are to be paid.

*J. Van Voorhis* for the appellants.

*E. G. Lapham*, for the respondents.

DAVIS, J. "The real estate," says Chancellor Kent, in *Lupton* v. *Lupton*, (2 *John. Ch.* 623,) "is not as of course charged with the payment of legacies. It is never charged unless the testator intended it should be, and that intention must be either expressly declared or fairly and satisfactorily inferred from the language and disposition of the will." This intent " will be effectual when found to exist in any form, because the law seeks only to discover and carry out the purposes of the testator." (*Per Johnson, J.*, 16 *N. Y. Rep.* 262.) In ascertaining that intention we are to be governed, so far as practicable, by the rules of construction as settled in such cases by the courts, and we are at liberty to look at the circumstances surrounding the testator at the time of making the will, as tending to shed light upon the intent with which he used its language. It is important also to bear in mind that there is no sound reason why a pecuniary legacy should take effect sooner than a devise of lands; and therefore, unless a reason can be found in the manifest intention of the testator, the legacy is entitled to no preference over the devise.

In the will in question there is no express charge of the legacies upon the real estate ; and there is no fund created out of which they shall be paid, and no direction as to when, or by whom they shall be paid. The intention to charge them, if it exist, must be inferred from the language and dispositions of the will interpreted in the light of the rules above referred to and of the various authorities on the subject.

The testator in this case was seised of real estate of the value of several thousand dollars, but, as the court has found, did not in fact have personal property sufficient to pay any portion of the legacies given by him. He bequeaths in plain and distinct terms, the several pecuniary legacies to the plaintiffs and others, but makes no specific devises of any portion of his real estate. When we reach the residuary clause of the will, we find his entire real estate (unless it is affected by the legacies) wholly undisposed of. It is all devised, if at all, under the phrase " *the rest, residue and remainder of my real and personal estate.*" The words *rest, residue and remainder* appertain here as well to the realty as to the personalty, and yet it is manifest that unless the testator intended his real estate should be affected by the legacies, there was nothing correctly answering the description of the phrase. The whole of his real estate is not the rest, residue or remainder of it. Something must be taken from the entirety to reduce it to a rest, residue or remainder ; and therefore where a testator has devised by that phraseology, the mind naturally recurs to the antecedent portions of the will to ascertain what has created *the rest, residue and remainder* thus disposed of. If we find that those terms, as applied to the property bequeathed and devised by them, are satisfied by the preceding dispositions of the will, then the inference that the testator only meant by them to dispose of what was left of his estate after making previous bequests and devises, so that he should die intestate as to none of it, justly arises. But if we find no antecedent devise by which the real estate of the tes-

tator is made to answer the description of the residuary clause, it seems to be natural and just to infer that the testator intended to reduce it to that description by charging the legacies upon it, if that course should be necessary to their payment. Upon a careful examination the authorities will be found to sustain these views. *Lupton* v. *Lupton,* (2 *John. Ch.* 614,) is the leading case, and the recognized law of this state. It is claimed that the rule laid down in that case is decisive against the plaintiffs in this case; but a careful examination will show that this is an error. In that case the testator gave several legacies to his grandchildren, payable when they should respectively arrive at the ages of twenty-one and twenty-five years. *He also made certain specific devises of real estate to his said grandchildren,* and then gave and devised to his three children, after the decease or marriage of his wife &c., " all the rest, residue and remainder of my real and personal estate not hereinbefore already devised and bequeathed." The chancellor says: " If that residuary clause created such a charge, the charge would have existed in almost every case, for it is the usual clause, and a kind of formula in wills. It means only when taken distributively, *reddendo singula singulis,* that the rest of the personal estate not before bequeathed is given to the residuary legatees, *and that the remainder of the real estate not before devised is in like manner disposed of.* It means that the testator does not intend to die intestate as to any part of his property, and it generally means nothing more." The chancellor cites and chiefly relies upon *Keeling* v. *Brown,* (5 *Vesey,* 359,) as showing that this construction is perfectly well settled. The will then directed the debts and funeral expenses to be paid, *and devised several parts of his real estate.* The testator then gave pecuniary legacies, and then gave and devised to B. " all the rest, residue and remainder of his estate and effects whatsoever, whether real or personal." The master of the rolls held that the legacies were not chargeable upon

the real estate.    The decision in *Lupton* v. *Lupton* has never been overruled in this state, and is undoubtedly the sound rule of law in such cases.    But it will be observed that both that case and *Keeling* v. *Brown*, to which it refers, differ from the present in a very essential particular.    Both those cases not only contained antecedent legacies, but also antecedent specific devises of portions of the testator's real estate. There was therefore something in the will which reduced the real estate devised by the residuary clause to the description there given ; and to which the language of that clause was distinctly referable.    The chancellor's rule of construction, therefore, properly applied to it : but in this case it cannot be properly applied.    In this will there are no previous devises ; and the clause " the rest, residue and remainder," cannot be taken, distributively *reddendo singula singulis*, and held to mean that the rest of the personal estate not before bequeathed is given to the residuary legatees, and that the *remainder of the real estate not before devised* is in like manner disposed of.    On the contrary, we are obliged in this case to say that the phrase " *rest, residue and remainder*" of the real estate *means the whole*, because of the absence of any previous disposition, and not that it means only what is not before devised ; as the chancellor was able to say in his case : or we are obliged to say that the testator did not intend to use this inapt phraseology to indicate the whole of his real estate, but because his purpose was that his residuary devisees should only have what was left of both his real and personal property, after his other children should get their trifling legacies. *Lupton* v. *Lupton* does not, therefore, lay down any rule which controls the case at bar ; nor does the rule that properly applies to this case conflict with that eminent authority.

The case of *Tracy* v. *Tracy*, (15 *Barb.* 504,) decided at special term by Mason, J. seems, so far as the facts can be gathered from the report, to have been precisely analogous to

the present. The learned justice in that case thought that *Lupton* v. *Lupton* was decisive " unless the blending and combining the real and personal estate in one devise in this case should be held to give a different construction to the will." He did not advert to the distinction above pointed out between the case before him and that presented by *Lupton* v. *Lupton*, but determined that the legacies were a charge, upon the ground that the real and personal estate were blended in one devise to the same person.

In *Reynolds* v. *Reynolds' Ex'rs*, (16 *N. Y. Rep.* 257,) the case of *Tracy* v. *Tracy* is referred to by Bowen, J. in the leading opinion in the case. He says : " As the devise was of the rest, residue and remainder of the estate, the decision is sustained by the authorities, but I think it was put upon a wrong ground. In the cases of *Bench* v. *Biles*, (4 *Madd.* 187 ;) *Hassel* v. *Hassel*, (2 *Dick.* 526 ;) *Brudenel* v. *Boughton*, (2 *Atk.* 268 ;) *Cole* v. *Turner*, (4 *Russ.* 366,) and *Nichols* v. *Postlethwaite*, (2 *Dall.* 131,) real and personal property were bequeathed together, and the real estate was charged with legacies, not on the ground of the blending of the two kinds of property, but because in each, the rest, residue and remainder of the property was devised and bequeathed. The learned justice cites *Lupton* v. *Lupton* in the course of his opinion, as undoubted authority, and it is obvious that he must have regarded *Tracy* v. *Tracy* as not in conflict with that case, as otherwise he could not have concluded that it was correctly decided for the reason above quoted. *Reynolds* v. *Reynolds* cannot however be considered as authoritative in this case, because the point here involved was not there presented.

A reference to the English authorities will show that in cases analogous to this the legacies have been charged on the real estate. Most of the English cases have grown out of the incessant struggle of the courts to make men honest in their graves, by subjecting their real estate to the charge of their

debts.   An analysis of these cases, though highly instructive, is not required in this; an able summary and examination of them may be found in 2 *Jarman on Wills,* 362 *et seq.*

But in *Hassel* v. *Hassel,* (2 *Dick.* 526,) the present point was quite distinctly involved.   There the testator bequeathed certain legacies, and then devised and bequeathed all his real and personal estate *not thereinbefore disposed of.*   Lord Bathurst held that the legacies were charged upon the real estate.   The language of the will in that case was not stronger than a devise of " the rest, residue and remainder."   Both phrases are substantially alike in their significancy.   In *Bench* v. *Biles,* (4 *Madd.* 187,) the testator gave all his real and personal estate to his wife for life, and after her decease various legacies, and then all the rest, residue and remainder of his real and personal estate to his nephews, share and share alike, &c.   Sir John Leach, V. C. held that the legacies were a charge on the lands, " considering the intention of the testator to be clearer than in *Aubrey* v. *Middleton,* (2 *Eq. Cas. Abr.* 479.")   " The testator," he said, " here gives all his real and personal estate to his wife for life, blending them together as one fund for her use, and after her death he gives several pecuniary legacies, and then the rest, residue and remainder of his real and personal estate to his nephews.   He plainly continues after his wife's death to treat them as one fund, the rest, residue and remainder of which, after payment of his legacies, is to go to his nephews."   This case is open to the same criticism which Mr. Justice Bowen applies to *Tracy* v. *Tracy :* and it may be remarked that *Aubrey* v. *Middleton* was not an authority for the decision, because in that case the executor was himself the devisee of the real estate, and he was expressly directed to pay legacies and annuities.   *Hassel* v. *Hassel,* (*ubi sup.*) is more directly in point. In that case there was no precedent gift affecting the real estate to which the words " not hereinbefore disposed of" could be referred; while in *Bench* v. *Biles* the words rest

and residue might have had reference to the devise of the real estate to the wife for life. (*See* 2 *Jarman on Wills,* 380.)

In *Cole* v. *Turner,* (4 *Russ.* 376,) it was held that a bequest of legacies followed by a gift of all *the residue* of the testator's real and personal estate, operated to charge the entire property with the legacies; and in *Morehouse* v. *Scaife,* (2 *Myl. & Craig,* 695,) " where the testator, after bequeathing certain pecuniary legacies, declared his will to be that all his debts and all the above legacies should be paid within six months after his decease, and all the *residue* of his estate both real and personal, lands and messuages and tenements, the testator gave to A., by her to be freely possessed at his decease, it was held by the vice chancellor, and afterwards by the chancellor on appeal, that by these words the real estate was charged as well with the legacies as the debts.

Neither in this case nor in *Cole* v. *Turner* was there any previous specific devise of real estate to which the term *residue* might be referred. And this fact is noted as worthy of remark by the learned author above cited. (2 *Jarm.* 380.) In *Morehouse* v. *Scaife,* it is true, there was an express direction that the legacies should be paid within six months; but in *Lupton* v. *Lupton* it is held that a mere direction that legacies be paid is not sufficient to make them a charge. The absence or presence of such a direction cannot justly affect the question, unless the person to whom the direction is given is also the residuary devisee.

In the case of *Lewis* v. *Darling,* (16 *How. U. S. Rep.* 1; 21 *Curtis,* 1,) this question was considered by the court. In that case Betts, the testator, bequeathed to the complainant Darling a legacy of $2500. He left but one child, a daughter, who intermarried with the defendant Lewis. She was his residuary legatee under a clause of the will in these words: " And as to all the rest and remainder of my property, debts, rights and actions, of what kind and nature soever, that may belong or appertain to me, I name and appoint, as my sole

and universal heiress, Maria Margaret Betts, my lawful daughter, in order that whatever there may appear to appertain and belong unto me, she may have and inherit the same with the blessing of God and my own." It was held that the legacy to Darling was a charge upon the real and personal estate that passed under the residuary clause. " The rule in such case is," say the court, " that where a testator gives several legacies, and then, without creating an express trust to pay them, makes a general residuary disposition of his whole estate, blending the realty and personalty together in one fund, the real estate will be charged with legacies, for in such a case the residue can only mean what remained after satisfying the previous gifts. (*Hill on Trustees*, 508.) Such is the settled law both in England and in the United States, though cases do not often occur for its application." The rule above cited is substantially and almost literally as it is laid down by *Hill on Trustees*, at page 360, citing the English cases above alluded to, and a large number of authorities are also cited by Justice Wayne, to sustain his position. *Lupton* v. *Lupton* has been supposed, he says, to conflict with this rule, but it does not do so ; for there it is said to be dependent upon the (intention of the) testator." The remark is correct so far as *the rule above quoted is concerned*, but it is not easy to see that *Lupton* v. *Lupton* is consistent with the conclusion of the court in *Lewis* v. *Darling*, for in both cases there were *antecedent specific devises*. It should be noticed, however, that the rule cited from *Hill on Trustees* supposes a case where legacies are given and then a residuary clause disposing of both real and personal estate ; and not one where there are antecedent specific devises of the real estate to which the residuary language may be referred for construction, according to the rule laid down in *Lupton* v. *Lupton*.

*Van Winkle* v. *Horton*, (2 *Green. Ch. R.* 172,) is very strongly in point. In that case, after giving several legacies, the testator gave the rest, residue, and remainder of his estate

Shulters v. Johnson.

real and personal to his two daughters. There was no specific devise of lands. It was held that the legacies were a charge on the real estate. The chancellor refers to *Lupton* v. *Lupton*, and says of that case, " A *part* of the real estate had been disposed of, so that the words residue and remainder of my real estate had their appropriate and strict 'meaning." And again referring to the same authority he says; " In another point the case was dissimilar from the present. There were several specific devises of real estate before the residuary devise, and consequently there was something for the residuary clause to operate upon without inferring that the testator supposed that a part of the real estate would be needed to pay the debts and legacies."

In *Rafferty* v. *Clark*, (1 *Bradf.* 473,) the will directed the payment of the debts of the testator and then gave three legacies; after which it gave and devised all the rest, residue, and remainder of the estate real and personal not thereinbefore disposed of, to the persons and in the proportions thereinafter named. There was a deficiency of the personal property to pay the debts, and after a sale of the real estate for that purpose, the question arose upon the disposition of the surplus. The learned surrogate held that the deficiency to pay legacies was chargeable on the real estate. " The term residue applies," says he, " as much to the real as to the personal estate, and unless the legacies be considered as intended to be charged on the real estate, there is no previous disposition of the real estate."

And see further on this point, *Webb* v. *Webb*, (2 *Barnard*, 86;) 2 *Eq. Cas. Abr.* ; *Elliott* v. *Hancock*, (2 *Vern.* 143.)

The position that the blending and combining of the real and personal estate in the same clause of the will is sufficient to charge the real estate with the payment of legacies, was disapproved by Bowen, J. in *Reynolds* v. *Reynolds*, (16 *N. Y. Rep.* 261.)

There are many authorities, however, which seem to sanc‑ tion the views of Mason J. in *Tracy* v. *Tracy* on this point. Without intending to review the cases, it may well be doubted whether the blending in the ordinary form of the residuary clause of a will can *per se* have such an effect. Such a gen‑ eral rule would often give to a residuary clause an effect be‑ yond the intention of the testator; as where his purpose is merely by a general disposition to prevent intestacy as to any part of his property. It would overturn the rule of inter‑ pretation given by *Lupton* v. *Lupton*, and which is to be applied when antecedent bequests and devises show that the rest, residue and remainder are referable to them for con‑ struction. But in a case like the present the blending of the real and personal property into one " *rest, residue and re‑ mainder*," may well serve to illustrate the intention of the testator to have that created by first satisfying the legacies previously given; otherwise the rest, residue and remainder of the real estate devised, must be construed to mean the whole of the lands of which the testator dies seised—an idea which could have been more readily expressed in briefer words.

It is not therefore because the residue of the estate real and personal is blended together and disposed of as one fund, that previous legacies are charged, but because in the absence of *specific devises, the blending of the entire estate into one residue*, after giving legacies, indicates an intention of the testator to give only the *residue* which would be created when the previous dispositions of his will should be sat‑ isfied.

Taking into view the circumstances that surrounded this testator—the fact that his property consisted chiefly if not wholly of lands—the doubt that that fact must have given rise to, whether the legacies could be paid out of his personal property—the fact that he was cutting off his other children with trifling legacies, and bestowing on two of them the great

Shulters *v.* Johnson.

bulk of his estate, I am strongly impressed with the belief that it was his intention that these legacies should be paid out of whatever property he should leave, and the residue, only, after their payment, should go to his residuary devisees. This view is strengthened by the fact that his will makes no provision for the payment of debts, so that it cannot be said he supposed the rest, residue and remainder might follow from their payment; but for legacies alone, without the payment of which no rest, residue or remainder could arise under the will. It is my opinion, therefore, that the judgment should be reversed and a new trial granted, or that a judgment should be rendered by this court upon the facts found, charging the payment of the legacies as shall be equitable, upon the lands, &c.

The judgment should be reversed and a new trial ordered.

WELLES, J. concurred.

JOHNSON, J. dissented.

Judgment reversed.

[MONROE GENERAL TERM, December 1, 1862. *Johnson, Welles* and *Davis,* Justices.]