Per Curiam.
Judgment affirmed on the opinion of the judge at special term.
The following is the opinion of Vann, J., at special term:
Vann, J.
The testatrix, Mary Adkins, died on the 4th of September, 1885, leaving a last will and testament dated August 17, 1882.
By the first “item” she bequeathed to her daughter Agnes $2,000, less $100 advanced, “ to be used for her use and benefit during life, then revert to the Adkins estate.”
By the second “ item ’’she gave absolutely to her daughter Millie $2,000, less $209 advanced.
The third “ item” is as follows, viz.:
. “To my grandchild Charles Gf. Andrews, I want given a common school education, and on arriving at the age of twenty-one to have $1,000; also to have his mother’s books and pictures, beds and bedding.
By the fourth “item” she bequeathed to her daughters her silver and furniture, except the writing-desk, book-desk and bureau, which she gave to her son Edward.
By the fifth “ item ” she requested that the library should be divided “ among the children as agreeably as possible.”
*194 By the sixth and last “item” she gave to her son Edward his “ grandfather’s missionary certificate and some of the pictures,” and appointed her daughters Agnes and Millie, executrices.
She left her surviving, two daughters, Agnes and Millie, a son Edward, and a grandson, Charles Gr. Andrews, the son of a deceased daughter. Millie died on the 6th of January, 1886.
The property of the testatrix at the time of her death consisted of a house and lot in the village of Sackets Harbor, worth $1,000, and a farm of fifty-two and a half acres in the town of Clay, Onondaga county, worth $4,000, and personal property worth about $1,000. She left debts to the amount of $500.
It is not entirely clear what personal property she owned at the time she made her will, but according to the evidence of Dr. Tyler, the executor of her father’s estate, she received from him on the 1st of May, 1880, notes and securities amounting to $4,724.63, and on the 19th of November, 1880, money to the amount of $383.59. She bought a house and lot of the other heirs for $900 and paid $600 for the two-thirds not owned by herself.
She does not appear to have any personal property, except furniture, etc., aside from that received from the estate of her father. She must have had about $4,500 left after paying off the heirs. Of this amount she gave $2,000 to her son Edward, to buy a farm with before she made her will. She was a widow-lady, and although careful and economical, used a part of her principal to support herself and family.
At the date of the will her personal property could not have much exceeded the sum of $2,000 in value, and it may have been somewhat less than that.
When her will is construed in the light of these circumstances does it charge the payment of the pecuniary legacies upon the real estate ? She does not mention real_ estate in her will, which contains no residuary clause, and it is quite evident that she intended to die intestate as to some portion of her property. The will was not thoughtlessly made, for she deducts from the legacies to her daughters, with some particularity, the sums that she had advanced them. The failure to give her only son anything of much pecuniary value, is a conspicuous omission, for, so far as appears, only friendly relations existed between them, and they lived but two miles apart. It suggests, as the object of the will, an intention to place her daughter and grandchild on the same footing, or as near as she desired, as her son Edward, to whom she had advanced $2,000, and there to let the law dispose of the rest of her estate, and from the special *195 bequests of articles whose chief value was in their associtions.
I think that this was the scheme of the will and that it accounts both for the omission in regard to Edward and for a residuary clause, neither of which can be otherwise satisfactorily explained. How did she intend that the legacies should be paid?
It is not probable, from her age and situation in life, that she expected any material increase in the value of her personal property, but on the other hand it is natural that she should have expected a decrease, as she was using more than her income.
The legacies were to her own unmarried daughters and an orphan grandson, all of whom were members of her immediate family, were supported by her and had no other means of support. Her personal estate was not half large enough to pay the legacies when she made the will, and the deficiency in personal property was much greater at the time of her death. Assuming that the will speaks from its date as to existing facts, such as the situation of her estate, still it is evident that she must have known that the legacies could not be paid without resorting to the real estate. She is presumed to have known the rule of law that legacies are to be paid out of personal property only unless they are impliedly charged upon the land. As remarked by Judge Finch in McCorn v. McCorn (100 N. Y., 511), the case is not one in which there proves to be a small and unexpected lack of personalty to pay legacies, and so in which a testatrix might be assumed to have honestly and reasonably supposed her personal assets sufficient; in such an event the foundation of an inference that the real estate was meant to be charged would be taken away and the deficiency would have no significance. But the situation is such that all possibility of innocent mistake is removed and the facts drive us to the alternative of believing that the testatrix, in making her last will, indulged in bequests known to be useless and vain or meant that they should be paid from the only possible source.
While the case is not without doubt I think it falls within the principle of that class of cases which hold that where the personal property is all disposed of by the fore part of the will and legacies to nearest kindred are bequeathed, by the latter part, or where there is a manifest and understood deficiency in the personal assets when compared with such legacies, so that there is no possibility of paying them except from the real estate the presumption of the testator’s purpose to have payment made from some property, even the real estate, becomes so strong as to require little if any further evidence of an intention to charge the real estate. *196 Goddard v. Pomeroy, 36 Barb., 546; McCorn v. McCorn (supra); Scott v. Stebbens, 91 N. Y., 605; Hoyt v Hoyt, 85 id., 142; LeFevre, v. Toole, 84 id., 95; Taylor v. Dodd, 58 id., 335; Ragan v. Allen, 7 Hun, 537; Shulters v. Johnson, 38 Barb., 80; Manson v. Manson, 8 Abb. N. C., 123.
While, perhaps, not one of the cases is sufficiently analogous to be controlling, .the principle upon which they res-that the testator intended to give something instead of nothing to his own children, is held to be decisive in this case, under all the circumstances. Unless it is- so con-trued, the entire will is substantially without purpose or effect. When thus construed it has an object .and that object is accomplished. The partial intestacy of the testatrix and her omission to remember her son in any substantial manner, throw some light upon her intention and confirm this construction.
Findings may be prepared in each case accordingly and the decree may be settled before me upon a notice of two days.