In the Matter of the Estate of HAROLD P. LILIENTHAL, Deceased.

Surrogate's Court, Kings County, November 28, 1930.

*Walter Avery*, for the executor.

*Walter J. Welch* [*John L. Delius* of counsel], for Marion L. Barrett, legatee.

*John F. Crotty*, special guardian for Daniel E. Allen, Jr., and Dorothy Allen, infants.

WINGATE, S. It can scarcely be considered surprising that the average layman, and indeed a large proportion of the members of the legal profession, views with mystification, not infrequently tinged with annoyance, the solemn judicial asseveration as presumed facts, of matters which are not only contrary to present day human experience but which at no time in the past ever had a factual basis in this country.

Those interested in the estates of decedents are solemnly and continuously assured that the sole criterion of testamentary construction is the intention of the testator. Not infrequently, however, this unexceptionable statement is followed by the qualification that in the absence of unequivocal contrary expression the language of the testator must be construed to mean what some judge thought some testator meant under an entirely dissimilar set of conditions in another land, perhaps a century and a half before. Not only are these rules in many instances opposed to present day human experience, but frequently they have been warped and twisted beyond any reasonable resemblance to the precedents upon which they were originally postulated, and occasionally their fundamental bases were, in the first instance, entirely inapplicable to, if not, indeed, in contravention of conditions prevailing in this country at the time of their enunciation. Of such a nature is the

presumption with which the court is faced in the case at bar. By the rules of law, it is compelled to turn for its basic rule of decision in this case to the determination of one of the first American chancellors, made in 1817 in the case of *Lupton* v. *Lupton* (2 Johns. Ch. 614). The rule stated in that case at page 623 reads as follows: "The real estate is not, as of course, charged with the payment of legacies. It is never charged unless the testator intended it should be, and that intention must be either expressly declared, or fairly and satisfactorily inferred, from the language and disposition of the will."

Reduced to non-legal language, this means that in construing a will, all things being equal, the court will presume that a testator's gift of a general legacy, no matter what the extent of his holdings of real property, is not to be paid in full unless there is enough personal property left after the payment of debts and funeral and administration expenses to satisfy all legacies. This presumption will prevail unless the language used by the testator in the particular will makes an express contrary direction, or unless, in the opinion of the court before which the case chances to arise, a contrary intention can be spelled out of its provisions.

To the lay mind, the distinction raised may, as a matter of first impression, seem slight and unimportant. Analysis, however, will demonstrate its serious potentialities for defeating the wishes of a decedent respecting those who are to benefit by his property after his death. If his estate on death consists of personal property worth $10,000 and real property worth a like amount and his will directs that legacies totalling $9,000 be paid to named persons and the remainder of his estate to another, and his debts, the cost of his funeral and the expenses of administering his estate amount to more than $1,000, it will be presumed that the testator intended that the persons to whom he gave the $9,000 were not to be paid in full. This result will follow unless something is found in the will or the circumstances of the decedent which appeals to the particular mental attitude of the court before which the case arises as indicating the probability that the decedent intended the contrary. The difficulty and frequent injustice of the rule results from the fact that the determination is largely placed at the whim, peculiar mental attitude or momentary humor of the particular court, whether appellate or of first impression, before which the matter chances to come for hearing; and whether the provisions of the will and the pertinent surrounding circumstances chance to spell out the formula which amounts to the requisite "open sesame" to the particular court at the precise moment.

The formulation of various rules during the passing of years,

by which such presumed intent is to be judged, does not alter this fact, since, as will be noted later, such rules as a whole have been more honored by their breach than in their observance.

This anomalous condition is unquestionably the result, as are the rules in many similar cases, of the early attempt by our courts to follow in this country judicial precedents formulated in England prior to the Revolution. Many of these, while perhaps applicable to conditions there prevailing, were inappropriate to the altered situation existing in this new country. The present is an excellent example of this type of rule. In the mother country land was scarce and valuable, and, particularly when this principle of construction was first formulated there, it was no doubt common experience that a piece of land was a most prized possession which the average man wished to preserve at all costs. This condition is reflected in the ancient feudal laws and in the rules respecting estates tail and primogeniture. They never prevailed in this country. In early times here the cheapest, most easily acquired and least considered possession was land, and even to-day, with our comparatively advanced civilization, the average attitude toward land is that it is merely a form of material possession, less highly considered than stocks, bonds or cash.

The *Lupton* case was decided solely on the authority of English precedents, but the rule which it enunciated has been repeatedly followed and expanded without reference to its derivation or basis. Indeed, its authority and extent have far outstripped the English rule from which it originally came. (See *Shulters* v. *Johnson*, 38 Barb. 80, and cases there reviewed.)

By 1847 the rule had become firmly established in the jurisprudence of this State and its reaffirmation was one of the first acts of the new Court of Appeals, which, in *Hoes* v. *Van Hosen* (1 N. Y. 120) said (at p. 122): " The personal estate of the testator is deemed the natural and primary fund to be first applied in discharge of his personal debts and general legacies  *  *  * and the testator is presumed to act upon this legal doctrine, until he shows some other distinct and unequivocal intention  *  *  *. It is a rule also that, in the event of a deficiency of assets to pay the debts of the testator, payable out of the personal assets, and discharge the specific and general legacies, the latter must abate in proportion to the deficiency, or be lost altogether, unless the real estate is charged with their payment."

In *Bevan* v. *Cooper* (72 N. Y. 317) the court said (at p. 322): " There are some rules which are well settled as to the payment or charging of general legacies. One is that the primary fund for the payment of them is the personal estate. It is one which is to be

observed, unless express direction otherwise is found in the will, or there be a clear intent to the contrary to be gathered from the provisions of the will, which may be assisted by the extraneous circumstances of the case."

The extent to which the rule has been carried is aptly illustrated in the case of *Hindman* v. *Haurand* (2 App. Div. 146; affd., 159 N. Y. 546), where the will, after giving various legacies, read: " After the bequests and provisions above mentioned, I give, devise and bequeath " the remainder to a specified individual. This was held not to constitute an expression of clear intent that the realty which passed under the residuary clause should be obliged to contribute to the payment of the legacies previously given.

It follows as a logical matter that the usual wording of a residuary clause is in and of itself an entirely insufficient basis from which to determine an intent on the part of the testator that realty passing thereunder shall contribute to the payment of legacies given earlier in the will, and such has been the substantially uniform determination. (*Brill* v. *Wright*, 112 N. Y. 129, 134; *Schnorr* v. *Schroeder*, 45 Hun, 148, 149; *Hindman* v. *Haurand*, 2 App. Div. 146, 151; affd., 159 N. Y. 546; *Myers* v. *Eddy*, 47 Barb. 263.) In this respect the application of the rule has gone beyond that of the English courts, where a contrary result is customary. (*Schnorr* v. *Schroeder*, 45 Hun, 148, 149.)

In this situation it becomes a question of importance to ascertain the varieties of testamentary provisions and extraneous circumstances which may induce courts to depart from the rule raising " artificial distinctions between wills of real and personal property." (*Carley* v. *Harper*, 219 N. Y. 295, 303.)

Four cases have attempted to point out logical bases for decision in such matters, namely, *Carley* v. *Harper* (219 N. Y. 295, 301); *Adkins* v. *Adkins* (13 N. Y. St. Repr. 193, 195); *Matter of Lummis* (101 Misc. 258, 270), and *Matter of Mould* (117 id. 1, 7; affd., 204 App. Div. 889; affd., 236 N. Y. 582).

As enumerated in these cases, the matters of importance in reaching a determination that a particular testator is to be deemed to have intended that general legacies should be charged on realty passing under a residuary clause are:

1. Whether there was a reduction in the testator's realty and an increase in his personalty after the execution of the will. (*Carley* v. *Harper, supra.*)

2. Whether there was, by the terms of the will, a blending of realty and personalty in the residuary clause. (*Carley* v. *Harper, supra; Matter of Lummis, supra; Matter of Mould, supra.*)

3. Whether the legatees were more the natural objects of testa-

tor's bounty than those named in the residuary clause. (*Carley* v. *Harper, supra; Matter of Lummis, supra; Matter of Mould, supra; Adkins* v. *Adkins, supra.*)

4. Whether the will gave a power of sale to the executors. (*Carley* v. *Harper, supra; Matter of Lummis, supra; Matter of Mould, supra.*)

5. Whether at the time of the execution of the will there was, to the knowledge of testator, a deficiency in his personalty as compared with the legacies given by his will. (*Carley* v. *Harper, supra; Matter of Lummis, supra; Adkins* v. *Adkins, supra.*)

6. Whether the will contained a direction that transfer taxes on the general legacies should be paid from the residue. (*Carley* v. *Harper, supra; Matter of Lummis, supra.*)

These considerations will be reviewed in order.

1. The statement in *Carley* v. *Harper* (219 N. Y. 295, 302), that " subsequent reduction of personal property and increase of real estate has a bearing on the question " is pure dictum, as no such facts appeared in the case. The authority cited for the position is *Scott* v. *Stebbins* (91 N. Y. 605), in which there was such a reduction but in which the charge on realty, which was adjudicated was (at p. 612) expressly based on: " The presumption is that the testator did not intend to give a preference to an object of charity or benevolence over the claims of his own children."

At page 615, however, after considering the facts relating to purchase of realty after the execution of the will, the court says: " The reduction of his personal property and the increase of his real estate evinces that he must have regarded the latter as chargeable with the legacies."

This is the only authority for the statement in *Carley* v. *Harper*, above noted, and the question receives no further consideration from or attention by the court in *Scott* v. *Stebbins*.

In *Morris* v. *Sickly* (133 N. Y. 456), however, such subsequent reduction was expressly pressed upon the court as a reason for charging the real estate with general legacies. The court, in refusing such charge, said (at p. 459): " Clearly, circumstances occurring long after the execution of a will could not have been within the contemplation of the testator, and could, therefore, throw no light upon the meaning of language which he then used. While a will is in some sense ambulatory as to the objects and subjects with which it deals, yet it is not ambulatory as to the (page 460) meaning of the language used by the testator and the intention and purpose which controlled the disposition of his property. That intention and purpose must be found to exist at the time of the execution of the will, and cannot be varied or changed by any after-occurring events."

Since this is a four-square determination by the Court of Appeals adverse to its previous dictum in *Scott* v. *Stebbins*, it must be concluded that the subsequent dictum in *Carley* v. *Harper* was inadvertent and that such subsequent reduction of personalty and increase of realty has no bearing on the question.

2. The second stated consideration, namely, of a blending of realty and personalty in the residuary clause, is an interesting one. It is apparent from the fact that the presence of a power of sale is enumerated in *Carley* v. *Harper* as an additional consideration worthy of note in this connection, that the blending referred to is not meant to include the actual commingling of proceeds of realty and personalty which may be accomplished by the execution of a power of sale by the executor, and connotes merely the joint gift in the residuary clause of real and personal property. This fact is further assured by the authorities cited as support of the position. In *Scott* v. *Stebbins* (91 N. Y. 605) the court intimates (at p. 613) that a residuary gift of realty and personalty in a will containing no prior devise may furnish a glimpse of an intention to charge the realty for the benefit of the legacies. This thought is also advanced in *McCorn* v. *McCorn* (100 N. Y. 511, 514) and furnished the basis of determination in a number of early cases of comparatively limited authority. (*Tracy* v. *Tracy*, 15 Barb. 503; *Schulters* v. *Johnson*, 38 id. 80; *Anderson* v. *Davison*, 42 Hun, 431; *Ragan* v. *Allen*, 7 id. 537.) Such, further, appears to be the English rule. (*Greville* v. *Browne*, 7 H. L. C. 689.)

On the other hand, it was expressly held in *Brill* v. *Wright* (112 N. Y. 129, 134): " general language in a will, giving legacies, followed by the usual residuary clause, is alone insufficient to .charge the legacies on the realty."

In *Briggs* v. *Carroll* (117 N. Y. 288) the court said (at p. 292): " We are very far from saying that a residuary clause, blending in its form of disposition both real and personal estate, will produce a .charge upon the former for the payment of legacies wherever the personal estate proves insufficient."

This doctrine, contrary to the position now considered, is further emphasized in *Hindman* v. *Haurand* (2 App. Div. 146, 151; affd., 159 N. Y. 546); *Harvey* v. *Kennedy* (81 App. Div. 261, 264; affd., 177 N. Y. 553); *Myers* v. *Eddy* (47 Barb. 263, 274); *Schnorr* v. *Schroeder* (45 Hun, 148), and *Vanderhoof* v. *Lane* (63 id. 193).

In view of these later statements and the fact that no case within forty-four years has based a determination of charge on this ground, it would appear that blending was not worthy of serious consideration as a basis for decision of this question.

3. The question of the effect of the comparative nearness of

relationship of the general and residuary legatees to the testator has received considerable attention in many of the opinions of courts dealing with this subject, Surrogate SLATER, in his learned and elaborate opinion in *Matter of Mould* (117 Misc. 1; affd., 204 App. Div. 889; affd., 236 N. Y. 582), voicing the belief that this consideration was the most vital in reaching a determination. An analysis of the decisions of the higher courts, however, inclines to the belief that no settled rule of decision can be based on this circumstance.

The research of the court has disclosed only fifty-two decisions of courts whose judgments are here binding in which the question of a charge on residuary realty for the benefit of general legacies was determined. In eight of these the comparative nearness of relationship of the general and residuary legatees did not appear from the opinions, indicating that the decisions of the courts in these cases were not based on this ground. (*Hogan* v. *Kavanaugh*, 138 N. Y. 417; *Matter of Haviland*, 49 Hun, 301; affd., 124 N. Y. 640; *Toch* v. *Toch*, 81 Hun, 410; affd., 146 N. Y. 365; *Goddard* v. *Pomeroy*, 36 Barb. 546; *Schmidt* v. *Limmer*, 91 App. Div. 360; *McGoldrick* v. *Bodkin*, 140 id. 196; *Richardson* v. *Richardson*, 145 id. 540; *Matter of Herborn*, 189 id. 319.) In two additional cases the will contained no residuary clause, thus obviously eliminating them from present pertinency (*Taylor* v. *Dodd*, 58 N. Y. 335; *Adkins* v. *Adkins*, 13 N. Y. St. Repr. 193). This leaves forty-two authoritative decisions in which the relationship was disclosed and in which it potentially appeared among the *rationes decidendi* of the respective courts. In six of these the relationship of one or more of the general legatees was closer than that of the residuary beneficiaries. (*Wiltsie* v. *Shaw*, 100 N. Y. 191, legatees, sons; residue, stranger; *Morris* v. *Sickly*, 133 id. 456, legatees, sister with whom testator resided, paying $100 a year for board and lodging, and niece; residue, nephew, brother and another sister; *McManus* v. *McManus*, 179 id. 338, legatee, adopted daughter; residue, brother; *Ely* v. *Megie*, 219 id. 112, legatees, charities, brothers, sisters and strangers; residue, charities; *Vanderhoof* v. *Lane*, 63 Hun, 193, legatees, brothers; residue, strangers, children of deceased husband; *Carberry* v. *Ennis*, 72 App. Div. 489, legatees, sister, niece, grandniece and strangers; residue, grandniece.)

In fourteen the residue was directed to persons closer to testator than the designated general legatees. (*Bevan* v. *Cooper*, 72 N. Y. 317, legatees, strangers; residue, wife and children; *Le Fevre* v. *Toole*, 84 id. 95, legatees, nieces, charity, strangers; residue, wife; *Hoyt* v. *Hoyt*, 85 id. 142, legatees, grandchildren; residue, wife and children; *Brill* v. *Wright*, 112 id. 129, legatee, nephew; residue,

stranger to whom testator stood in *loco parentis; Burns* v. *Allen* 89 Hun, 552; affd., 154 N. Y. 741, legatees, nephews; residue adopted daughter; *Harvey* v. *Kennedy*, 81 App. Div. 261; affd., 177 N. Y. 553, legatees, sister, charity; residue, daughter; *Matter of Mould*, 117 Misc. 1; affd., 204 App. Div. 889; affd., 236 N. Y. 582, legatees, sister, nieces, nephews, strangers; residue, person to whom testatrix stood in *loco parentis; Lupton* v. *Lupton*, 2 Johns. Ch. 614, legatees, grandchildren; residue, children; *McLaughlin* v. *McLaughlin*, 30 Barb. 458, legatees, sister, niece, nephew; residue, children; *Roman Catholic German Church* v. *Wachter*, 42 id. 43, legatee, charity; residue, brothers and sisters; *Myers* v. *Eddy*, 47 id. 263, legatees, grandchildren; residue, daughter and grandchildren; *Schnorr* v. *Schroeder*, 45 Hun, 148, legatees, stranger, nieces; residue, daughter; *Lediger* v. *Canfield*, 78 App. Div. 596, legatees, stepdaughter, strangers; residue, stepdaughter, blood relatives; *Brennan* v. *Adler*, 190 id. 589, legatee, grandchild; residue, son.)

Finally, there were twenty-two cases in which the claims of general and residuary legatees, based on relationship to the testator, were approximately equal. (*Reynolds* v. *Reynolds*, 16 N. Y. 257, legatee, son; residue, sons; *Kalbfleisch* v. *Kalbfleisch*, 67 id. 354, legatees, children; residue, children; *Scott* v. *Stebbins*, 91 id. 606, legatees, sons; residue, sons, father, charity; *McCorn* v. *McCorn*, 100 id. 511, legatees, wife and son; residue, children; *Briggs* v. *Carroll*, 117 id. 288, legatees, wife, son, grandson; residue, children; *Dunham* v. *Deraismes*, 165 id. 65, legatee, son; residue, children and grandchildren; *Irwin* v. *Teller*, 188 id. 25, legatee, son; residue, daughters; *Carley* v. *Harper*, 219 id. 295, legatees, relatives, strangers; residue, sister, stranger; *Hindman* v. *Haurand*, 2 App. Div. 146; affd., 159 N. Y. 546, legatees, children, nephews, nieces, sister-in-law; residue, wife; *Pearson* v. *Reed*, 152 App. Div. 468; affd., 215 N. Y. 663, legatees, wife, collateral relative; residue, wife, adopted daughter; *Tracy* v. *Tracy*, 15 Barb. 503, legatees, children; residue, other children; *Shulters* v. *Johnson*, 38 id. 80, legatees, daughter, sons; residue, sons; *Ragan* v. *Allen*, 7 Hun, 537, legatees, wife, grandchildren; residue, daughters; *Anderson* v. *Davison*, 42 id. 431, legatees, wife, grandchildren; residue, son; *Thorp* v. *Munro*, 47 id. 246, legatees, wife, brother, son, stranger; residue, son; *American Baptist Home Mission Society* v. *Foote*, 52 id. 307, legatees, charity, strangers; residue, strangers; *Matter of James*, 80 id. 371, legatees, blood relatives; residue, same; *Matter of Vandevort*, 8 App. Div. 341, legatees, wife, daughter, son, grandchildren; residue, children, grandchildren; *Arthur* v. *Dalton*, 14 id. 108, legatee, husband; residue, daughter; *Matter of Ryder*, 41 id.

247, legatees, wife, daughter; residue, son; *Stewart* v. *Crysler*, 52 id. 597, legatees, children; residue, children; *Matter of Sargent*, 125 Misc. 498; affd., 215 App. Div. 639, legatees, charity, strangers, cousins; residue, same cousins.)

The results in these three classes of cases are interesting. If the rule be taken at its face value, to the effect that there is a presumption against a charge, and a demonstration of intention on the part of the testator contrary to the rule is requisite to produce a charge on realty passing under the residuary clause, and further, if closeness of relationship is a cogent circumstance in this connection, we should expect to find a preponderance of determinations granting such charge in cases in which the relationship of the general legatee was closer than that of the residuary legatee. The reverse is the fact. Out of the six cases in which the general legatee had prior claims on testator's bounty, a charge was denied in four, or sixty-six and two-thirds per cent, and allowed in two, or thirty-three and one-third per cent.

Similarly, in the cases in which the claims of the residuary legatees were superior to those of the general legatee, we should expect to find an overwhelming preponderance of results denying a charge, since here the rule against charge would be reinforced by the presumed intention of the testator. Strangely enough, the overwhelming preponderance is the other way. Out of the fourteen cases in which the residuary legatee had an apparently greater claim upon the bounty of the testator, ten, or over seventy-one per cent, *denied* a charge and only four, or less than twenty-nine per cent, *allowed* it.

Turning to the last classification of equal claims of those to be benefited by the different subdivisions of the will, it would be anticipated, on the showing last reviewed, that the proportion of cases in which a charge was refused would be even higher. Instead, an overwhelming percentage of results is found adjudging a charge, being no less than eighteen out of the twenty-two cases in this classification, or between eighty-one and eighty-two per cent *in favor* of a charge.

The result is chaos so far as the deducing of any intelligible rule based on relationship is concerned.

4. The fourth noted basis for decision is as to whether or not a power of sale is given in the will. Out of the foregoing fifty-two authoritative determinations on the subject, the opinions in fourteen failed to disclose whether or not a power of sale was included in the terms of the will. These were *Dunham* v. *Deraismes, Matter of Haviland, Ragan* v. *Allen, Schnorr* v. *Schroeder, American Baptist Home Mission Society* v. *Foote, Burns* v. *Allen, McGoldrick* v.

*Bodkin, Matter of Sargent, Lupton* v. *Lupton, Hogan* v. *Kavanaugh, Irwin* v. *Teller, McLaughlin* v. *McLaughlin, Goddard* v. *Pomeroy* and *Roman Catholic German Church* v. *Wachter.* Of the remaining thirty-eight, eighteen contained a power of sale and twenty did not. Of those containing a power of sale, a charge on the residuary realty was adjudged in twelve (*Taylor* v. *Dodd, Kalbfleisch* v. *Kalbfleisch, Le Fevre* v. *Toole, Hoyt* v. *Hoyt, Ely* v. *Megie, Carley* v. *Harper, Anderson* v. *Davison, Matter of Vandevort, Matter of Ryder, Matter of James* and *Matter of Herborn*) and was refused in six (*Vanderhoof* v. *Lane, Toch* v. *Toch, Carberry* v. *Ennis, Harvey* v. *Kennedy, Schmidt* v. *Limmer* and *Matter of Mould*). In the twenty in which a power of sale was omitted from the will, a charge was adjudicated in ten (*McCorn* v. *McCorn, Briggs* v. *Carroll, McManus* v. *McManus, Thorp* v. *Munro, Arthur* v. *Dalton, Stewart* v. *Crysler, Richardson* v. *Richardson, Tracy* v. *Tracy, Shulters* v. *Johnson* and *Adkins* v. *Adkins*) and refused in ten (*Reynolds* v. *Reynolds, Bevan* v. *Cooper, Brill* v. *Wright, Wiltsie* v. *Shaw, Morris* v. *Sickly, Hindman* v. *Haurand, Lediger* v. *Canfield, Pearson* v. *Reed, Brennan* v. *Adler* and *Myers* v. *Eddy*). The foregoing results demonstrate that the presence of a power of sale in the will resulted in or contributed to a determination of charge in sixty-six and two-thirds per cent of the cases in which it appeared, while such charge was refused in only half of the cases in which no power was granted by the will and the question deemed of sufficient importance for remark.

In this consideration, for the first time, a tangible constructive thought is demonstrable, in that in a very considerable preponderance of cases in which a power of sale is contained in the will, a determination of intent to charge residuary realty in favor of general legatees will be found to exist.

5. The fifth stated basis for decision is the inadequacy of personalty existing at the time of making the will. Facts on this subject were made to appear in seventeen cases, in thirteen of which the personal property was shown to have been inadequate when the will was executed and in four it was shown to have been adequate. In only one case where such inadequacy appeared was there a refusal to charge (*Brennan* v. *Adler*), while in twelve, or over ninety-two per cent, a charge was granted (*McCorn* v. *McCorn, Briggs* v. *Carroll, McManus* v. *McManus, Ely* v. *Megie, Carley* v. *Harper, Arthur* v. *Dalton, Stewart* v. *Crysler, Richardson* v. *Richardson, Matter of Herborn, Matter of Sargent, Irwin* v. *Teller* and *Adkins* v. *Adkins*). On the other hand, the adequacy at execution was made to appear in four cases, and in three of these (*Hindman* v. *Haurand, Vanderhoof* v. *Lane* and *Myers* v. *Eddy*) a

charge was refused, and in only one (*Dunham* v. *Deraismes*) was it granted.

6. The sixth and final basis for decision is given as the direction by the testator to pay transfer taxes from the body of his estate. In view of the comparatively recent imposition of such taxes, the number of cases in which this circumstance has arisen is necessarily few, but there are three such (*Ely* v. *Megie, Carley* v. *Harper* and *Matter of Sargent*), in all of which a charge was decreed.

This review would seem to demonstrate beyond reasonable question that the presence of a direction to pay transfer taxes from the body of the estate or a demonstration of inadequacy of personalty at the time of the execution of the will are substantially conclusive indications of an intent on the part of the testator to charge realty passing under a residuary clause, in favor of general legatees, and that the granting of a power of sale is entitled to only slightly inferior weight; that reduction in personalty subsequent to the making of the will and a general gift of realty and personalty in the residuary clause are immaterial considerations; and, finally, that while comparative relationship to the testator may in certain cases be worthy of consideration, the adjudications on this subject are too greatly in conflict to permit of the formulation of any rule on the subject.

One final matter is worthy of attention in this connection, namely, the extent of the deficiency in personalty which will warrant a charge. Obviously, such deficiency, to carry any weight, must have been reasonably within the knowledge of the testator, but it is believed that a presumption should be held to exist in the usual case that a person who deliberately sets about that arrangement of his affairs which is to take effect after his death has given sufficient attention to the matter to understand and appreciate the extent of the assets at his disposal.

There is not, and, in the nature of things, cannot be, any definite rule on the subject. A dictum in *Briggs* v. *Carroll* (117 N. Y. 288, 292) is of some interest in the inquiry. It reads: " The deficiency must exist when the will is executed, and be so great and so obvious as to preclude any possible inference that the testator did not realize it, or that he may have expected and intended before his death to remove the difficulty.

" If the disparity, even though serious, is such that the testator may have been unconscious of its existence; or so dependent upon estimates of value that in the decedent's judgment it might have been adequate to the burden imposed; or such that he might reasonably expect to repair the deficiency before his death,

the ground for inferring an intention to charge the land would disappear."

This may well be read in conjunction with the language of the Appellate Division, Second Department, in *McGoldrick* v. *Bodkin* (140 App. Div. 196, 199): "if, when he made the will and specified the legacies, he knew that he had not sufficient personal property to pay them, he should be deemed to have intended to subject his residuary real estate to the burden of payment, or otherwise he must be deemed to have made his will a mere trick upon the legatees."

When so read, the rule would seem to be inferable that upon a demonstration of inadequacy of personalty at the time of execution of the will, a presumption arises that testator meant to charge his residuary real estate. In the absence of further demonstration on behalf of the residuary legatee, this should prove conclusive, but this presumption is subject to rebuttal by a showing that the testator was unconscious of the inadequacy or that he had a reasonable expectation, as distinguished from a mere hope, of repairing the difficulty within a reasonable time in the future.

In determining whether a disparity actually existed, it must be obvious that all prior charges upon his personal property, to a reasonable amount, must be taken into consideration, such as debts, funeral charges and the usual expenses of settlement of the estate. These he "is supposed to have taken into account" (*American Baptist Home Mission Society* v. *Foote*, 52 Hun, 307, 311), "by like presumption she knew that her personal estate * * * would be decreased by the expenses of administration" (*Matter of Barry*, 164 N. Y. Supp. 932).

Applying these rules to the facts of the case at bar, it appears that at the time of the execution of his will testator was thirty-seven years of age, employed as a bank clerk. He was extremely methodical in habits and kept a careful and detailed account of his assets. At the time of the execution of his will he owned personalty of a then value of $10,524.77 and realty showing an equity of $17,250. His life was insured in favor of his estate in the sum of $3,340.60. The general legacies given by the will aggregated $15,700, showing a deficiency of personal property at the time of the execution of the will of $1,834.63. The funeral and testamentary expenses, which were usual and reasonable in amount and well within the contemplation of the testator at the time the will was executed, have amounted to $2,048.27, making a total deficiency of personalty available for the payment of the legacies, as of the date of the execution of the will, of $3,882.90, or about twenty-five per cent.

The 7th item of the will read: " I further direct that all bequests and legacies herein made shall be free from all transfer tax or other expenses, and that the same shall be paid by my Executor out of my estate as part of the administration expenses."

This item was followed by a residuary clause in usual form.

No power of sale was contained in the will.

The general legatees were nephews and nieces of testator's deceased wife toward whom he had always manifested an unusual fondness, whom he had frequently visited, who had frequently visited him, and to whom he had made frequent gifts; his father-in-law, a man of advanced years, who had been a member of his household for years, and strangers. The residuary legatee was testator's aunt.

Under the facts disclosed, and the cases hereinbefore reviewed, it is apparent that the direction for payment of transfer taxes on the general legacies and the appreciable inadequacy of personalty at the time of the execution of the will are substantially conclusive indicia of testator's intention that the general legacies should be paid in full at the expense of the residuary real estate, if necessary. The omission of the power of sale is not entitled to weight on behalf of a contrary determination, since, as hereinbefore reviewed, the authoritative determinations of this State have adjudged a charge as frequently where such power was absent as where it was present. Finally, such weight, if any, as is to be attached to closeness of relationship favors the general legatees.

The court, therefore, determines that the proper construction of the will in the case at bar is to impose a charge on the real property in favor of the general legatees and that the latter are entitled to receive payment in full on the facts shown in the account.

Enter decree on notice accordingly.