In the Matter of the Estate of CHARLES L. CRANE, Deceased.

Surrogate's Court, Ontario County, March 21, 1939.

*Curtis FitzSimons*, for Olga Crane Tifft, petitioner.

*Chacchia, Lynch & Roberts*, for the respondents.

CRIBB, S. The executor under the will of the decedent, Charles L. Crane, instituted proceedings for the judicial settlement of his accounts. The petitioner herein appeared by her attorney and commenced this proceeding to determine whether a legacy of $1,000 provided for her under the will of decedent is chargeable against real estate owned by the decedent at the time of his death.

From the testimony taken it appears that the testator, Charles L. Crane, was twice married. Olga Crane Tifft, the petitioner herein, was born of the first marriage. Her mother died when she was eight years of age and she was taken into the family of relatives where she remained and was treated as one of their own until her marriage. She never returned to live in her father's home. The testator subsequently married a sister of his first wife. Of this marriage were born three children, Alma Crane, Harry Crane, the respondents herein, and Mildred Crane, who is said to be an incompetent confined in a mental institution in California.

The testator for many years operated a wholesale meat business and also a retail meat market in a store next the house where he lived. His second wife, Alma O. Crane, in addition to household duties and caring for the children, did the work of a man in the meat market, lifted heavy beefs, cut meat, waited on customers, etc. The testator worked outside buying beef excepting Saturdays and Sundays when he worked in the market. As the testator could not read or write, his wife also kept the books, deposited moneys from the business in her own name and the title to the home was in her name. The testator was given to drinking at times. The wife seems to have been the business head of this joint enterprise. This history seems to me to throw some light on the subsequent disposition of the property accumulated from the combined efforts of the testator and his wife, Alma O. Crane.

Alma O. Crane died intestate on August 5, 1931. A decree was made by this court on May 6, 1932, judicially settling her estate and under which the testator herein received $1,974.64 and the three children, Alma, Harry and Mildred, each $1,316.43.

The real estate of which Alma O. Crane died seized consisted of a house and lot in Geneva, N. Y., the stipulated value of which is $3,200. The testator herein, as her surviving spouse, became

vested with a one-third interest therein. The petitioner herein, of course, received nothing from this estate.

The testator, Charles L. Crane, died December 28, 1937, at the age of eighty-one years. His will, admitted to probate in this court, after providing for the payment of his debts and funeral expenses, contained the following:

" *Second.* I give, devise and bequeath unto my daughter, Olga Crane Tifft of the City of Rochester, Monroe County, New York, the sum of One Thousand ($1,000.00) Dollars.

" *Third.* All the rest, residue and remainder of my property and estate, as well real as personal, and wheresoever situated, which shall at the time of my death belong to me, or be subject to my disposal by Will, I give, devise and bequeath unto my daughter Alma R. Crane and my son Harry M. Crane, share and share alike, absolutely and in fee simple to them and their heirs, executors, administrators and assigns forever, according to the nature of the property."

His son Harry M. Crane was named executor. The will was dated July 8, 1932.

The property owned by the testator at his death consisted only of a bank account of $940.57 and his one-third interest in the house and lot owned by his wife at the time of her death, which interest has a value of approximately $1,050. The account as filed by the executor reveals that after the payment of funeral expenses and creditors there remains only $544.35 and that is subject to commissions and administrative expenses.

Counsel for the petitioner, Olga Crane Tifft, argues that the testator intended that the general legacy of $1,000 to her should be a charge upon the real estate. He seems to rely chiefly upon the following facts: 1. That the petitioner received nothing from her stepmother's estate, and that her father sought to provide her from his estate with an amount substantially the same as was received by his children by his second marriage from the estate of their mother. 2. That being illiterate and unfamiliar with legal affairs, the testator believed his will was so worded that Olga would receive $1,000, even if recourse to the real property should be necessary. 3. That the residuary clause of the will clearly indicates such intent on the part of the testator. 4. That the absence of a power of sale in the will should not be considered as, since the amendment to section 13 of the Decedent Estate Law in 1930, it is " no longer necessary to include such a provision in a will."

If it is the intention of a testator that his real estate shall be charged with the payment of legacies, such intention must be

expressly declared by the will or fairly and satisfactorily inferred from its language and provisions, read in the light of extrinsic circumstances. The construction of a will requires ascertaining the intent of the testator at the time of its execution and for that purpose extrinsic evidence properly bearing upon that intention may be received. (See *Morris* v. *Sickly*, 133 N. Y. 456.) Many decisions have been rendered by our courts involving the same question presented in this case, and in the process of such judicial determinations various rules have been formulated which are supposed to aid the courts in ascertaining the intent of the testator. But such rules as a whole have been more honored by their breach than in their observance as was revealed in the opinion of the learned surrogate in *Matter of Lilienthal* (139 Misc. 225). In the latter case the court, after a painstaking analysis of the great number of decisions involving the point in question, reached this conclusion: " This review would seem to demonstrate beyond reasonable question that the presence of a direction to pay transfer taxes from the body of the estate or a demonstration of inadequacy of personalty at the time of the execution of the will are substantially conclusive indications of an intent on the part of the testator to charge realty passing under a residuary clause, in favor of general legatees, and that the granting of a power of sale is entitled to only slightly inferior weight; that reduction in personalty subsequent to the making of the will and a general gift of realty and personalty in a residuary clause are immaterial considerations; and, finally, that while comparative relationship to the testator may in certain cases be worthy of consideration, the adjudications on this subject are too greatly in conflict to permit of the formulation of any rule on the subject."

In the will here under consideration there was no direction as to the payment of transfer taxes and all beneficiaries were of the same degree of relationship to the decedent. At the time of the execution of the will the testator had a bank deposit of $1,974.64, nearly twice the amount of the one general legacy provided by the will, and was seized of a one-third interest in the real property, consisting of a house and lot, left by his second wife. The remaining two-thirds interest of this realty was owned by the three children of the second marriage, one of whom, an incompetent, is in an institution in California. After the death of Alma O. Crane, her children, Alma and Harry Crane, continued to occupy the house and the testator made his home with them up to the time of his death. Alma and Harry maintained the home, paying all the bills and taxes, and furnishing the food with the exception that on week ends the testator was accustomed to bring home some meat or other food which he particularly enjoyed. There is testimony to

the effect that at times the testator asked them for "spending money, clothes and so on."

It also appears that the testator was about seventy-five years old when he executed his will and was "very active," and that he, with one Illacqua, who had a truck, continued to go about the country buying beefs, etc., and that they "split the profits fifty-fifty." He carried on this business up to within one year of his death. These facts, it seems to me, refute the argument of counsel for the petitioner that the testator at the time he executed his will, being an old man, realized that he had only $1,974.64 and a one-third interest in the real estate to maintain him the rest of his days, and that, therefore, being desirous that the daughter by his first wife should receive approximately the same as his other children, intended that her $1,000 legacy should be a charge upon his interest in the real estate. On the contrary, even granting that he had in mind that Olga upon the death of Alma O. Crane had received no part of the property which he and the latter had accumulated, and, therefore, contemplated a division of his estate in such a manner as would provide to Olga an amount substantially the same as the other children had received, I still believe he entertained a "reasonable expectation, as distinguished from a mere hope" (See *Matter of Lilienthal, supra,* p. 237) that he would maintain his cash assets as they then existed, or perhaps augment them. That he failed to do this cannot be used as proof that he never had any such intention. "While a will is in some sense ambulatory as to the objects and subjects with which it deals, yet it is not ambulatory as to the meaning of the language used by the testator and the intention and purpose which controlled the disposition of his property. That intention and purpose must be found to exist at the time of the execution of the will, and cannot be varied or changed by any after-occurring events." (*Morris* v. *Sickly, supra.*)

The petitioner contends that the testator having secured the services of a lawyer, must have stated to him his desires and intentions for the ultimate distribution of his property, and being unable to read or write, assumed that his will was so drawn as to insure $1,000 to Olga, even by resorting to the real estate if his personal estate proved inadequate. He employed a competent attorney who, it seems, had the testator indicated a desire to charge the real estate, would have included a specific direction to charge, or otherwise used such appropriate words as to leave no doubt of the testator's intention.

The petitioner insists that the residuary clause clearly indicates an intent to charge the real estate, and quotes from the opinion

in *Matter of Sargent* (215 App. Div. 639), in which case a charge against realty was found. However, it should be borne in mind that in that case in addition to the residuary clause was a direction to pay all inheritance taxes from her estate " so that each legatee may receive the full sum bequeathed to him or her, if my estate permits thereof," and the court emphasized this clause in reaching its determination. The residuary clause in the instant case is in a form commonly used, excepting for the words at the end of the clause " according to the nature of the property." If these additional words mean anything at all, it seems to me they indicate the intention of the delivery of property to Alma and Harry in the same form in which it existed at the time of testator's death; certainly they do not express an understanding on the part of the testator that the realty shall be sold to pay the $1,000 legacy. While the residuary clause of the will now under consideration devised and bequeathed " all the rest, residue and remainder of my property and estate," I do not find such phraseology alone controlling in establishing an intent to charge realty. To prove such an intent in this case there should be some additional provisions in the will, or some extrinsic facts and circumstances indicative of such intent. I find none in this case. (See *Briggs* v. *Carroll*, 117 N. Y. 288, 292, and *Brill* v. *Wright*, 112 id. 129, 134.)

The will before us contains no power of sale. Counsel for petitioner submits that this omission is of no consequence because such a provision has no longer been necessary since the amendments of 1930 to the Decedent Estate Law giving to executors the power to take possession of, and to sell, mortgage or lease real property in the absence of a valid power in a will for such purposes, and to the Surrogate's Court Act permitting the distribution of real property in kind upon a judicial settlement, and from which he asserts a tendency to " abolish the mythical and technical distinction between real and personal property as it heretofore existed." He seems to forget the limitations set upon the exercise of the powers provided by such amendments. The provisions of these amended sections fall far short of giving to executors the broad powers which may be exercised under a valid power of sale in a will. The lack of a power of sale in the will is entitled to some consideration (See *Matter of Lilienthal, supra,* p. 235), and is at least further evidence of no intent to charge real estate.

I am of the opinion that the testator did not intend to charge his interest in the real estate with the payment of the $1,000 legacy to the petitioner herein, and, therefore, hold that the same is not a charge thereon.

Enter decree on notice accordingly.